IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

       Plaintiff,                 No. 2:10-cr-00146 KJN

     v.                       ORDER

BOBBY MITCHELL,

       Defendant.

_____/

        Before the court is defendant's motion to suppress evidence seized from him, and statements allegedly made by him, during a traffic stop and subsequent search of his vehicle. (Dkt. No. 5.)  On June 17, 2010, the court held an evidentiary hearing related to defendant's motion, and the following witnesses testified at the hearing: Officer Jennifer Linn ("Officer Linn"), defendant, and defendant's passenger on the day in question, Daniel Zoller ("Mr. Zoller").  For the reasons that follow, the undersigned will deny defendant's motion to suppress.

////

////

////

////

1

I.     BACKGROUND

On January 30, 2010, at approximately 2:30 p.m.,[1] Officer Linn, a U.S. Forest Service Law Enforcement Officer, was patrolling on El Dorado National Forest land when she nearly collided with a vehicle driven by defendant on a narrow mountain road.  Officer Linn was driving downhill around a blind corner, and defendant was driving uphill in the opposite direction.  The road on which the near collision occurred is narrow with no painted center line and, at the time, snow berms several feet in height impaired visibility at the blind corner. Defendant swerved to avoid the collision, and both drivers stopped their respective vehicles in the middle of the road.

With the vehicles still facing in opposite directions, Officer Linn activated the vehicle's lights, exited her vehicle and approached defendant's vehicle on the driver's side.  She asked for defendant's driver's license and asked him why he was driving on the wrong side of the road.  Defendant provided his driver's license and stated that he was "swinging wide" to turn onto a dirt road leading to Junction Reservoir.  Officer Linn also obtained identification information for Mr. Zoller, who did not have a driver's license with him.

According to Officer Linn, when she first approached defendant's vehicle and obtained identification information from defendant and Mr. Zoller, she observed that defendant and Mr. Zoller had red, glassy, watery eyes, which suggested to her, based on her training and experience, that they might be under the influence of marijuana.  Officer Linn asked defendant whether there was any marijuana or marijuana paraphernalia in the vehicle.  Officer Linn testified ////

---

[1]  At the evidentiary hearing, there was some confusion regarding whether the encounter at the heart of this dispute took place at approximately 2:30 p.m. or 4:30 p.m.  Officer Linn and defendant's attorney ultimately agreed that, based on the face of the written citation, the events took place at approximately 2:30 p.m.  Defendant testified that he believed that the encounter with Officer Linn took place later in the day, around 4:00 p.m.  Ultimately, the exact time in the middle of the afternoon at which these events took place is not material to the resolution of defendant's suppression motion.

1  that defendant hesitated, looked away, looked back at her, and responded "no."  At this point,

2  Officer Linn believed that defendant was not being truthful.

3  Officer Linn returned to her patrol car, drove it and parked it behind defendant's

4  car, and verified defendant's and Mr. Zoller's information with the dispatch center.  Defendant's

5  driver's license came back "clean" and the registration on the vehicle was in order, but dispatch

6  reported that Mr. Zoller's license had been suspended or revoked.

7  Officer Linn then approached defendant's vehicle for a second time, this time

8  from the passenger side.[2]  Officer Linn testified that at this point in the encounter she had already

9  decided not to issue a traffic citation to defendant, but that her purpose on her second approach of

10  the vehicle was to investigate possible marijuana possession.  Officer Linn asked Mr. Zoller why

11  his license was suspended.  She also asked Mr. Zoller whether he had smoked marijuana that

12  day, and Mr. Zoller initially responded "no" and then said that he had smoked marijuana that

13  morning.  Officer Linn then ordered Mr. Zoller to open his mouth so that she could check for

14  marijuana residue or particulate in his mouth.[3]  Mr. Zoller complied, and Officer Linn did not

15  observe any residue or particulate.  Officer Linn then asked Mr. Zoller if there was any marijuana

16

17  [2]  Officer Linn testified that she approached defendant's vehicle a total of two times: once
to obtain defendant's and Mr. Zoller's identification information and a second time to question

18  them about marijuana.  However, defendant and Mr. Zoller testified that Officer Linn approached
the vehicle three times: the first two approaches were to obtain identification information from

19  defendant and Mr. Zoller, respectively, and the third was to inquire about marijuana.  The dispute
regarding the number of approaches is not material to the disposition of this motion because most

20  of the interactions material to this motion occurred during the last of the approaches.  Therefore,
solely for purposes of clarity herein, the undersigned will assume that Officer Linn approached

21  defendant's vehicle twice.

22  [3]  Prior to the evidentiary hearing, the parties were proceeding under the mistaken belief
that Officer Linn had ordered defendant to open his mouth, not Mr. Zoller.  All of the witnesses

23  that testified at the evidentiary hearing, including Officer Linn, clarified that Officer Linn ordered
Mr. Zoller to open his mouth.  Officer Linn testified that in preparing for the evidentiary hearing

24  she realized that she had mistakenly informed the Assistant United States Attorney that she had
ordered defendant to open his mouth.  Officer Linn testified at the evidentiary hearing that she

25  must have directed Mr. Zoller, and not defendant, to open his mouth because she issued that
order from the passenger side of the vehicle.  Defendant suggests that Officer Linn's altered

26  recollection undermines her credibility.  The undersigned disagrees.

1  in the vehicle, and Mr. Zoller responded that he was not aware of the presence of any marijuana

2  in the vehicle.

3          After questioning Mr. Zoller, Officer Linn asked defendant whether there was any

4  marijuana or drug paraphernalia in the vehicle.[4]  Defendant responded that there was not.  Officer

5  Linn then asked defendant whether he minded if she looked in his vehicle if there were no drugs

6  in it.  Defendant refused this request for consent to search his vehicle.  Officer Linn responded:

7  "You don't want me to look in your car, why?"  According to Officer Linn, defendant then

8  "blurted out, 'Okay, there's weed.'"  As discussed below, defendant's and Mr. Zoller's testimony

9  have created a factual dispute regarding whether, just prior to defendant's statement regarding

10  "weed," Officer Linn told defendant that his refusal to consent constituted probable cause to

11  search the vehicle and intimated that she would call for back-up.  In any event, defendant then

12  stated that the drugs were under the passenger seat and that they belonged to him.  Thereafter,

13  Officer Linn asked defendant and Mr. Zoller to step out of the vehicle, checked them for

14  weapons, and moved them to the front of the vehicle.  Officer Linn then recovered a plastic bag

15  containing 1.2 grams of marijuana, two green discs containing 2.2 grams of concentrated

16  marijuana (hashish), and a glass pipe containing a consumable amount of marijuana.

17          Officer Linn issued a Violation Notice for violation of 21 U.S.C. § 844(a),

18  possession of marijuana/concentrated marijuana.  She did not issue a traffic citation, but gave

19  defendant some form of verbal warning regarding driving on the wrong side of the road.  The

20  entire encounter lasted approximately nineteen minutes.[5]

21  ////

22

23     [4]  As discussed below, Officer Linn had trouble remembering at the evidentiary hearing
24  whether she asked defendant about the presence of drugs in the car on her second approach of the
   car.

25     [5]  Officer Linn testified that the entire encounter took place in nineteen minutes based
   upon her initial call to dispatch and her subsequent notification to dispatch that the stop was
26  concluded.  Defendant testified that it took anywhere between twenty and forty-five minutes.

1            On April 13, 2010, the government filed an information charging defendant with a

2 misdemeanor violation of 21 U.S.C. § 844(a) for knowingly and intentionally possessing a

3 Schedule I controlled substance.  (Dkt. No. 1.)  On May 3, 2010, defendant filed the instant

4 motion seeking to suppress physical evidence seized, and statements made, as a result of the

5 traffic stop.  (Dkt. No. 5.)  Defendant requested an evidentiary hearing and, on June 17, 2010, the

6 court held an evidentiary hearing regarding defendant's suppression motion.  (Dkt. No. 15.)

7 II.     DISCUSSION

8       A.     Officer Linn's initial stop of defendant's car was lawful.

9            Defendant first argues that Officer Linn's initial stop of defendant's car was

10 illegal because she lacked a reasonable suspicion of criminal activity or a traffic violation to

11 support the initial traffic stop.  This argument lacks merit.

12            "The Fourth Amendment prohibits 'unreasonable searches and seizures' by the

13 Government, and its protections extend to brief investigatory stops of persons or vehicles that fall

14 short of traditional arrest."  United States v. Willis, 431 F.3d 709, 714 (9th Cir. 2005) (quoting

15 United States v. Arvizu, 534 U.S. 266, 273 (2002)) (internal quotation marks omitted).  Such an

16 investigatory traffic stop is justified where an officer has a "reasonable suspicion" that criminal

17 activity may be afoot.  Id.  "To constitute reasonable suspicion, the officer's belief that criminal

18 activity is afoot must be supported by 'specific and articulable facts which, taken together with

19 rational inferences from those facts, reasonably warrant th[e] intrusion.'"  United States v. Drake,

20 543 F.3d 1080, 1088 (9th Cir. 2008) (quoting Terry v. Ohio, 392 U.S. 1, 21 (1968))

21 (modification in original); see also United States v. Palos-Marquez, 591 F.3d 1272, 1274-75

22 (9th Cir. 2010) ("To determine whether a stop was supported by reasonable suspicion, we

23 consider whether, in light of the totality of the circumstances, the officer had a particularized and

24 objective basis for suspecting the particular person stopped of criminal activity" (citation and

25 quotation marks omitted).).  "A traffic violation alone is sufficient to establish reasonable

26 suspicion."  United States v. Choudry, 461 F.3d 1097, 1100 (9th Cir. 2006).

1    Here, Officer Linn lawfully stopped defendant's car.  She had a reasonable

2    suspicion that defendant had committed a traffic violation when she observed defendant driving

3    his car on the incorrect side of the road just prior to the near-collision.

4         B.    Officer Linn's questioning regarding marijuana was permissible.

5    Next, defendant contends that Officer Linn impermissibly extended the duration

6    of the traffic stop by: (1) ordering Mr. Zoller to open his mouth so that she could check for

7    marijuana particulate or residue; (2) questioning Mr. Zoller regarding the status of his driver's

8    license; and (3) questioning defendant and Mr. Zoller about marijuana.  Defendant argues that

9    Officer Linn unreasonably prolonged the stop without an independent reasonable suspicion to

10   question him or Mr. Zoller about matters unrelated to the purpose of the initial traffic stop, i.e.,

11   driving on the wrong side of the road.  The government counters that Officer Linn's additional

12   questioning about marijuana usage and/or possession constituted a "brief pause" in the traffic

13   stop similar to that in United States v. Turvin, 517 F.3d 1097 (9th Cir. 2008), such that Officer

14   Linn's extension of the duration of the stop was reasonable and she was not required to have an

15   independent reasonable suspicion to inquire into matters unrelated to the traffic stop.

16   Alternatively, the government contends that Officer Linn had "additional, particularized,

17   objective facts that gave her reasonable suspicion" of other possible criminal activity thereby

18   justifying further inquiry of defendant.  (Dkt. No. 13 at 4.)

19   "An officer's inquiries into matters unrelated to the justification for the traffic stop

20   . . . do not convert the encounter into something other than a lawful seizure, so long as those

21   inquiries do not measurably extend the duration of the stop."  Arizona v. Johnson, ___ U.S. ___,

22   129 S. Ct. 781, 788 (2009) (citing Muehler v. Mena, 544 U.S. 93, 100-01 (2005)).  For example,

23   in United States v. Mendez, 476 F.3d 1077 (9th Cir. 2007), cert. denied, 550 U.S. 946 (2007), the

24   Ninth Circuit Court of Appeals held that an officer did not need independent reasonable

25   suspicion to ask a defendant about matters unrelated to the justification for the traffic stop.

26   There, the officer questioned the defendant about his gang affiliation and prison record based on

6

an observation of certain tattoos, and this questioning led to an admission that there was a gun in the vehicle.  The Court of Appeals held that the officer did not need an independent reasonable suspicion to ask questions unrelated to the traffic stop where the time between the stop and the ultimate arrest was eight minutes and where the questioning occurred only while an identification check was processing and thus "could not have expanded the duration of the stop since the stop would . . . have lasted until after the check had been completed."  See id. at 1079-81.

In United States v. Turvin, the Court of Appeals arguably extended the rule from Muehler and Mendez and held that an officer does not need an independent reasonable suspicion to ask questions unrelated to an initially lawful traffic stop where such questioning and a subsequent request for consent to search "did not *unreasonably* prolong the duration of the stop." 517 F.3d at 1103-04 (emphasis added).  There, an officer stopped the defendant, Turvin, because of numerous traffic violations, briefly questioned the occupants of the vehicle about those violations, and began writing traffic citations.  While the officer was writing the citations, a second officer appeared on the scene and informed the first officer that a "rolling methamphetamine laboratory" had been found in Turvin's vehicle after a traffic stop earlier that year.  This information prompted the citing officer to temporarily cease writing the citations, inform Turvin that he was aware of the earlier incident, and seek consent to search the vehicle after observing a speaker box in plain view that could house a rolling methamphetamine laboratory.  Turvin consented to the vehicle search, and the officers found a sawed-off shotgun and methamphetamine.  Id. at 1099.  Turvin, who was cited for the traffic violations and indicted on drug trafficking charges, moved to suppress on the ground, among others, that the officers lacked a reasonable suspicion to prolong the detention.  The district court granted Turvin's motion, but the Court of Appeals reversed, holding that "the circumstances surrounding the brief pause . . . were reasonable."  Id. at 1101.  The Court of Appeals emphasized that the total time between the initial stop and the point when Turvin consented to the search was fourteen minutes, and that the officer observed the speaker box prior to requesting consent.  Id.

1    The implication of <u>Muehler</u> and <u>Mendez</u> is that where an officer's inquiries into

2  matters unrelated to the justification for the traffic stop measurably extend the duration of the

3  stop, the officer must have an independent reasonable suspicion to inquire into those unrelated

4  matters.  After <u>Turvin</u>, it appears that the an officer must have an independent reasonable

5  suspicion to inquire into matters unrelated to the justification for the traffic stop where the stop is

6  "unreasonably" prolonged under the totality of the circumstances.  <u>See</u> 517 F.3d at 1101 ("In the

7  present case, we must examine the 'totality of the circumstances' surrounding the stop, and

8  determine whether [the officer's] conduct was reasonable" (citation omitted).).

9    There is some initial allure to the government's argument that Officer Linn's

10  questioning of defendant and Mr. Zoller was permissible under <u>Turvin</u>.  Very broadly stated,

11  Officer Linn initially stopped defendant based on her observation of a traffic violation, briefly

12  paused to inquire about marijuana usage and/or possession, and ultimately issued a verbal

13  warning to defendant regarding his driving, albeit after searching the vehicle and citing defendant

14  for marijuana possession.  Additionally, the entire detention in this case lasted approximately

15  nineteen minutes, and the defendant's admission about the location of the marijuana in his car

16  occurred approximately seven to ten minutes into the stop.  <u>See</u> <u>Turvin</u>, 517 F.3d at 1099

17  (emphasizing that the total time between the initial stop and the point when Turvin consented to

18  the search was fourteen minutes).

19    The undersigned has concerns, however, that Officer Linn's conduct might lie at

20  the outer bounds of the rule from <u>Turvin</u>.  Officer Linn testified at the evidentiary hearing that

21  she had concluded, after retrieving and verifying defendant's identification information prior to

22  her second approach of the vehicle, that she did not intend to issue a citation to defendant for a

23  traffic violation; she only intended to issue a verbal warning.  Instead of issuing the verbal

24  warning and releasing defendant, Officer Linn questioned defendant and Mr. Zoller regarding

25  marijuana and questioned Mr. Zoller regarding his suspended license.  Moreover, she candidly

26  ////

1 testified that her purpose on her second approach of the vehicle was to investigate "further

2 criminal activity other than driving on the wrong side of the road," i.e., marijuana possession.

3         However, the undersigned need not decide whether Officer Linn's brief

4 questioning unrelated to the original reason for the traffic stop is consistent with the rule from

5 Turvin, or whether it "unreasonably" prolonged the traffic stop, because Officer Linn had a

6 reasonable suspicion to prolong the stop and question defendant and Mr. Zoller about marijuana.

7 According to the Statement of Probable Cause, Officer Linn observed that on her first approach

8 of the car defendant and Mr. Zoller "both had glassy looking eyes" and, when Officer Linn asked

9 defendant if he had any drugs or drug paraphernalia in his vehicle, defendant "looked away, and

10 then stated no."  At the evidentiary hearing, Officer Linn reiterated her observation that

11 defendant and Mr. Zoller had red, watery, and glassy eyes, and that defendant's hesitation in

12 responding to her initial question indicated to her that defendant might be lying.  In light of

13 Officer Linn's training and experience, these physical observations and defendant's hesitation

14 when answering her question about drugs or drug paraphernalia provide a sufficient reasonable

15 suspicion to continue inquiring about marijuana possession or usage by defendant and Mr. Zoller.

16         C.    Officer Linn had probable cause to search the vehicle.

17         Finally, defendant contends that he did not voluntarily consent to Officer Linn's

18 search of his vehicle, which yielded marijuana and hashish.  The government counters that the

19 voluntariness of defendant's consent is irrelevant because the government concedes that Officer

20 Linn did not obtain a valid consent to search the vehicle.[6]  Instead, the government argues that

21 Officer Linn had probable cause to search the vehicle after defendant indicated that there was

22 marijuana under the passenger seat of the car, which occurred after defendant initially refused

23 ////

24

25         [6] Ironically, however, defendant's witness, Mr. Zoller, repeatedly testified that defendant, albeit allegedly coerced, consented to a search, and defendant characterized his telling Officer Linn that there was marijuana under the passenger seat of the car was "kind of like saying yes" to

26 a search.

1   Officer Linn's request to search the vehicle and Officer Linn further questioned defendant

2   regarding why he did not want her to search the vehicle.

3         At the outset, the undersigned must resolve an underlying factual dispute

4   regarding Officer Linn's questioning of defendant after defendant's refusal of consent to search

5   and the eventual search of the vehicle.  Officer Linn's Statement of Probable Cause states that on

6   her second approach of the vehicle she asked Mr. Zoller whether there was any marijuana in the

7   vehicle, and Mr. Zoller responded "not that I know of."  Her Statement of Probable Cause relates

8   that Officer Linn then asked defendant whether "he had any weed on him," and defendant

9   responded that he did not.  Next, Officer Linn asked defendant whether he minded if she looked

10  in his car, and defendant refused this request for consent to search.  Officer Linn then inquired:

11  "You don't want me to look in your car, why?"  According to the Statement of Probable Cause,

12  defendant then stated "Okay there's weed," and conveyed that the marijuana was under the

13  passenger seat of the car and that it belonged to him.

14        At the evidentiary hearing, Officer Linn testified to this same sequence of events,

15  but had some trouble, due to the passage of time, recalling whether she had asked defendant if

16  there was marijuana in the vehicle on her second approach of the vehicle.  Officer Linn did not

17  specifically recall asking defendant that question on her second approach, but stated: "If that's

18  what I put in the P.C. statement, then that's what happened.  It has been so long that I didn't

19  remember asking him a second time, honestly."  Additionally, Officer Linn confirmed on cross-

20  examination that the only reason that she searched was because defendant told her there was

21  marijuana in the vehicle.

22        At the evidentiary hearing, defendant and Mr. Zoller testified to a materially

23  different account of facts.  Defendant testified that Officer Linn asked him whether he had

24  marijuana in the vehicle, and he said that there was not.  Defendant testified that he had

25  responded there were no drugs in the vehicle because he did not remember at the time Officer

26  Linn posed the question that he actually did have drugs in the car.  He further testified that after

10

his negative response, Officer Linn asked him if she could search his vehicle.  Defendant testified that he refused Officer Linn's request for consent to search, and that Officer Linn responded: "That sounds like probable cause right there."  Defendant testified that he "just stood there silent for a second," and then Officer Linn "mumbled something about backup."[7]  Defendant further testified that he first realized he had drugs in the car "[r]ight when [Officer Linn] started talking about probable cause and backup."  According to defendant, after hearing Officer Linn's statements regarding probable cause and back-up, he told Officer Linn that there was marijuana under the passenger seat because he did not "want to deal with it."  Defendant explained that he had "been searched countless times with nothing," and that officers had searched his car whether he consented or not.[8]  He concluded that there was "no point" in making Officer Linn search for the drugs or call for back up and have officers "tear apart [his] car."  Defendant also confirmed that Officer Linn did not request consent to search more than once, and that he never expressly consented to a search.

////

--------

[7] On cross-examination, Officer Linn testified as follows:

> Q.     Now, the first question you asked him was, if there's nothing in your car, do you mind if I look in your car?
> A.     Yes.
> Q.     And Mr. Mitchell said, "Yeah"?
> A.     Yeah.
> Q.     And then you said that's probable cause?
> A.     No, I did not.
> Q.     And you said, I'm going to have to get backup out here?
> A.     No.
> Q.     What you do say that you said is, "Why don't you want me to look in your car?"
> A.     Yes.
> Q.     And it's at that point that you say Mr. Mitchell told you there was weed in the car?
> A.     Yes.

[8] Insofar as defendant's credibility is concerned, the undersigned ascribes no weight to defendant's testimony that his vehicle had been searched numerous prior occasions.

11

1    Before resolving the factual dispute arising from defendant's and Officer Linn's

2   contrary accounts of the events in question, the undersigned addresses the credibility of

3   Mr. Zoller's testimony.  The undersigned finds that Mr. Zoller's testimony at the evidentiary

4   hearing is largely unhelpful to resolving defendant's motion and that Mr. Zoller is not an entirely

5   credible witness.  Although all of the witnesses' memories of the events have been impacted by

6   the passage of time, Mr. Zoller contradicted his own testimony about basic facts related to the

7   encounter with Officer Linn and testified to a state of facts that, at many points, departed from

8   facts that Officer Linn and defendant agreed to be true.  For example, Mr. Zoller repeatedly

9   testified that defendant ultimately consented to the search of his vehicle, but defendant and the

10   government maintain that defendant never actually gave consent.  In addition, Mr. Zoller testified

11   that Officer Linn began searching the car before defendant said anything about the presence of

12   marijuana in the car, which is squarely contrary to defendant's and Officer Linn's respective

13   accounts.  Therefore, the undersigned finds it suspicious that although defendant's and

14   Mr. Zoller's accounts of the events that transpired were contradictory in several material respects,

15   curiously one of the few clear points of agreement was that Officer Linn allegedly made

16   statements regarding "probable cause" and "backup."  Accordingly, in light of Mr. Zoller's

17   dubious recollections of the events that transpired that day, as a general matter the undersigned

18   gives very little weight, if any, to Mr. Zoller's testimony.

19    The undersigned finds that Officer Linn's Statement of Probable Cause and

20   testimony provide the more credible account of the events in question and, accordingly, finds that

21   Officer Linn did not state that defendant's refusal of consent constituted probable cause and did

22   not "mumble" something about calling for back-up.  Officer Linn testified consistent with her

23   Statement of Probable Cause and, where there were discrepancies between her Statement of

24   Probable Cause and her recollection on the stand, she provided forthcoming, reasonable, and

25   non-evasive explanations for the discrepancies.  Moreover, the undersigned notes that Officer

26   Linn's testimony regarding her determination that the traffic stop was essentially concluded prior

12

1  to her follow-up questioning regarding drugs, which substantially undermined the government's

2  position as to the applicability of <u>Turvin</u>, demonstrated Officer Linn's credibility as a witness.  In

3  addition, the undersigned finds that defendant's testimony that he only remembered that he had

4  drugs in the car when Officer Linn allegedly made a statement regarding probable cause is not

5  entirely believable.  Considering the entire record and all of the testimony in this case, the

6  undersigned finds that Officer Linn did not state that defendant's refusal of consent constituted

7  probable cause and did not "mumble" something about back-up.

8         Proceeding under Officer Linn's account of the facts, defendant's statement,

9  "Okay there's weed," in response to Officer Linn's follow-up question regarding why defendant

10  did not want her to look in his vehicle provided Officer Linn with probable cause to search.

11  Defendant's admission that he had marijuana in the car rendered Officer Linn's subsequent

12  search of the car permissible under the Fourth Amendment.

13         Defendant argues that once he refused the request for consent, Officer Linn was

14  not entitled to ask defendant the following question: "You don't want me to look in your car,

15  why?"  In essence, defendant appears to suggest that there is some absolute bar to follow up

16  questions regarding the search of a vehicle once consent is initially refused.  Defendant has not

17  supported this proposition with any legal authority, notwithstanding the opportunity to file

18  supplemental briefs after the evidentiary hearing identifying such authority.  The limit on an

19  officer's ability to ask follow up questions after an initial refusal of consent to search is

20  uncertain, but the law does not appear to support the <u>Miranda</u>-type bar suggested by defendant.

21  <u>See</u>, <u>e.g.</u>, Wayne R. LaFave, 4 <u>Search and Seizure: A Treatise on the Fourth Amendment</u> § 8.2(f)

22  (4th ed. & 2009-2010 Supp.) (stating that it appears that there is no <u>Miranda</u>-type absolute bar on

23  questioning following an initial refusal to consent to a search); <u>United States v. Hicks</u>, 539 F.3d

24  566, 570-71 (7th Cir. 2008) (rejecting argument that as soon as consent was initially refused, the

25  police should have left and that, as a result the police intended to override the refusal through

26

1  further questioning that lasted between five and twenty minutes).[9]  In fact, absent an absolute bar

2  to further questioning, human nature will likely cause an officer to ask a follow-up inquiry why a

3  person does not consent to search of a vehicle if there is no contraband in it.  As Officer Linn

4  testified, she was "just curious" why not.  The undersigned notes that although a follow-up

5  question may be permissible, it does not mean that repeated questioning could never be coercive.

6  However, the single follow-up question in this instance is not legally prohibited.

7         The parties have argued past one another regarding whether defendant's

8  admission that there were drugs in the vehicle implicates the issue of voluntary consent.  The

9  government has never asserted that defendant's statement constituted a valid consent, and

10  defendant testified that he was only asked for his consent once, and he refused.  Nevertheless,

11  defendant has argued that his statement was the equivalent of coerced consent.  The undersigned

12  disagrees.  However, even if the court assumes that defendant's statement, "Okay, there's weed,"

13  constituted defendant's grant of consent to Officer Linn, the consent was validly given.

14         "Whether consent to search was voluntarily given is 'to be determined from the

15  totality of all the circumstances.'"  United States v. Brown, 563 F.3d 410, 415 (9th Cir. 2009)

16  (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973)).  In this Circuit, courts "consider

17  five factors in determining whether consent was voluntarily given: (1) whether the defendant was

18  in custody; (2) whether the arresting officer had his guns drawn; (3) whether Miranda warnings

19  were given; (4) whether the defendant was notified that he had a right not to consent; and

20  (5) whether the defendant had been told that a search warrant could be obtained."  United States

21  _____

22  [9] In arguing in favor of a rule that an initial refusal of consent should bar further attempts
by the police to seek consent, another commentator recently noted:

23         [E]xisting law on consent searches does not preclude the police from
         trying to "persuade" the suspect to consent.  Not only are the police not

24         required to take "no" as the final answer, but current law does not preclude
         the police from "wearing down" the suspect to obtain consent.

25
Tracey Maclin, The Good and Bad News About Consent Searches in the Supreme Court,

26  39 McGeorge L. Rev. 27, 80 (2008) (footnotes and internal quotation marks omitted).

1   v. Vongxay, 594 F.3d 1111, 1119-20 (9th Cir. 2010).  "All five factors need not be satisfied in

2   order to sustain a consensual search," id. at 1120, and "no one factor is determinative."  Brown,

3   563 F.3d at 415.

4            Here, assuming defendant's comments constituted consent to search his vehicle, it

5   was voluntary under the circumstances.  First, although defendant was not "in custody" as a

6   result of the traffic stop, see Maryland v. Shatzer, 130 S. Ct. 1213, 1224 (2010) (citing Berkemer

7   v. McCarty, 468 U.S. 420, 440 (1984)); United States v. Butler, 249 F.3d 1094, 1098 (9th Cir.

8   2001), he was seized because he had been stopped for a traffic violation, the lights on Officer

9   Linn's vehicle remained on at the time of the search in question, and Officer Linn had not yet

10  indicated to defendant that the traffic stop was over and that he was free to leave.  See Brendalin

11  v. California, 551 U.S. 249, 255 (2007) ("The law is settled that in Fourth Amendment terms a

12  traffic stop entails a seizure of the driver even though the purpose of the stop is limited and the

13  resulting detention quite brief" (citation and quotation marks omitted).); see also United States v.

14  Chan-Jimenez, 125 F.3d 1324, 1326 (9th Cir. 1997).  Second, Officer Linn did not have her gun

15  drawn when she requested permission to look in defendant's vehicle, and her tone when speaking

16  with defendant and Mr. Zoller was conversational and not of a coercive nature.  Third, whether

17  Miranda warnings were provided is inapplicable in a case like this one, where defendant had not

18  been arrested and was not subjected to custodial interrogation.  See, e.g., Vongxay, 594 F.3d at

19  1120.  Fourth, Officer Linn did not advise defendant that he had a right not to consent, but she

20  was not required to do so.  Id. at 1120 n.6 ("An officer is not required to inform the person being

21  searched that he has a right to refuse consent; doing so simply weighs in favor of finding

22  consent.").  Moreover, defendant understood that he had the right to refuse consent, and was

23  willing to do so, which is evidenced by the fact that he refused Officer Linn's first request for

24  consent at a time when defendant believed he had no drugs in the vehicle.  Defendant's

25  knowledge of his right to refuse consent and prior refusal are "highly relevant" to the analysis of

26  whether the ultimate consent was voluntary.  See, e.g., United States v. Corrales, 183 F.3d 1116,

1   1125 (9th Cir. 1999).  Finally, the undersigned has determined that Officer Linn did not advise

2   defendant that a search warrant could be obtained.  Weighing the appropriate factors, the

3   undersigned concludes that even if defendant's statement that there was marijuana in the car were

4   to be construed as a form of consent, that consent was valid under the totality of the

5   circumstances.[10]

6   III.   CONCLUSION

7          For the foregoing reasons, IT IS HEREBY ORDERED that defendant's motion to

8   suppress is denied.

9          IT IS SO ORDERED.

10  DATED:  July 16, 2010

11

12

13                                          _____
                                            KENDALL J. NEWMAN
14                                          UNITED STATES MAGISTRATE JUDGE

15

    KJN:nkd
16

17

18

19

20

21

22

23

24  _____

25  [10]  Even if the undersigned were to assume that defendant was "in custody" for the
    purpose of evaluating voluntary consent, the Supreme Court has held that, even in the case of a
    validly arrested person, "the fact of custody alone has never been enough in itself to demonstrate
26  a coerced confession or consent to search."  United States v. Watson, 423 U.S. 411, 424 (1976).